UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2449 JGB (SHKx)** | Date | September 19, 2018 |
|---|---|---|---|
| Title | *Rick Hollis v. Union Pacific Railroad Co., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Attorneys' Fees (Dkt. No. 22); (2) GRANTING Plaintiff's Motion for Final Approval of Class Settlement (Dkt. No. 26)  (IN CHAMBERS)

On August 31, 2018, Plaintiff Rick Hollis ("Plaintiff") filed a Motion for Final Approval of Class Settlement.  ("MFACS," Dkt. No. 26.)  On June 11, Plaintiff filed a Motion for Attorney Fees.  ("MAF," Dkt. No. 22.)  These matters are unopposed.  The Curt held a hearing on these matters on September 17, 2018.  Upon consideration of the papers filed in support of these motions, as well as oral arguments presented by the parties, the Court GRANTS Plaintiff's MFACS and GRANTS Plaintiff's MAF.

## I.  BACKGROUND

On May 8, 2017, Plaintiff filed a Private Attorneys General Act ("PAGA") Notice with the Labor and Workforce Development Agency ("LWDA"), asserting various claims against Defendant Union Pacific Railroad Company ("Defendant").  (MFACS at 10.)  On August 29, 2017, the parties participated in a full-day mediation session with Mediator Gig Kyriacou.  (Id.)  In that process, they engaged in informal discovery which culminated in the production of hundreds of pages of documents.  (Id.)  The mediation session did not result in settlement.  (Id.)  The parties participated in a second full-day mediation session on September 26, 2017, which also ended without settlement.  (Id. at 11.)  Plaintiff filed a class action complaint against Defendant on November 6, 2017 in the Superior Court of California County of San Bernardino.  ("Complaint," Dkt. No. 1-1.)  The Complaint asserted two causes of action: (1) failure to

provide complete/accurate wage statements; and (2) PAGA penalties. (Id. at 1.) On December 6, 2017, Defendant removed the case to federal court. (Dkt. No. 1.) On February 1, 2018, Plaintiff filed a Motion for Preliminary Approval. (Dkt. No. 16.) Defendant filed a Response in Support of Plaintiff's Motion on February 9, 2018. ("Response," Dkt. No. 17.) On March 6, 2018, the Court granted preliminary approval of this class action settlement and granted conditional certification of the proposed settlement class. ("Preliminary Approval Order," Dkt. No. 21.) In the Preliminary Approval Order, the Court ordered:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.

2. The following Settlement Class is certified for settlement purposes only: Plaintiff and the approximately 5,845 current and former employees of Defendant Union Pacific Railroad Company who (i) had California taxes withheld from their pay, and (ii) who received one or more wage statements from Defendant from May 11, 2016 through the date of preliminary approval of this settlement.

3. The Court appoints Ackermann & Tilajef, P.C., Melmed Law Group P.C., and Winston Law Group, P.C. as counsel on behalf of the Settlement Class for purposes of settlement only.

4. Plaintiff Rick Hollis is appointed as the representative of the Settlement Class for purposes of settlement only.

5. The Court appoints Rust Consulting as the settlement administrator.

6. The Notice of Class Action Settlement is approved.

7. The Court authorizes mailing of Notice to the settlement class members by first-class United States pursuant to the Settlement Agreement.

8. The hearing date for the Final Fairness Hearing is hereby set for September 17, 2018 at 9:00 a.m. in this Court.

(Id. at 9-10.)

## II. THE SETTLEMENT AGREEMENT

Plaintiff filed a Stipulation of Settlement on February 1, 2018. ("Settlement Agreement," Dkt. No. 16-2.) The Court preliminarily approved the Settlement Agreement on March 6, 2018. (Preliminary Approval Order.) The terms of the Settlement Agreement are discussed below.

### A. Settlement Class

The settlement class for the purposes of the settlement of this case includes: "Plaintiff and the approximately 5,845 current and former employees of Defendant Union Pacific Railroad Company who (i) has California taxes withheld from their pay, and (ii) who received one or more wage statements from Defendant from May 11, 2016 through the date of preliminary approval of this settlement." (Id. at 2.) The finalized class list consisted of 5,830 individuals. (MFACS at 8.)

### B. Release

The Settlement Agreement will "fully, finally, and forever settle, compromise, and discharge the released claims." (Settlement Agreement at 21.) Defendant denies liability to Plaintiff and the Settlement Agreement is not intended to constitute an admission by Defendant to the merits of the claims against them. (Id. at 23.) Nevertheless, Defendant agrees pay a total of $1,083,965 to resolve the claims against it. ("Settlement Amount," Id. at 17.) In return, excepting those who timely request to be excluded, Plaintiff and the settlement class members provide Defendant with a "full and complete release with respect to the released claims during the class period and through September 1, 2018." (Id. at 21.)

### C. Financial Terms

The parties proposed that the Settlement Amount will be divided as follows. Defendant will pay $50,000 in penalties to settle all PAGA claims, 75% of which shall go to the LWDA and the balance reverting to the net Settlement Amount. (Id. at 9.) The Settlement Agreement provides that class counsel shall receive $361,321, or about 30% of the Settlement Amount. (Id.) Plaintiff also request initially requested $15,000 for costs. (Id.) The actual costs, and the costs class counsel requests in their MAF, totaled $6,592.05. (MFACS at 9 n.2.) Additionally, the Settlement Agreement estimated that the settlement administrator would be paid $40,000 from the Settlement Amount. (Settlement Agreement at 16–17.) The actual cost of settlement administration, and the cost for which parties request final approval, was $25,000. The difference between the estimated and actual attorneys' costs and settlement administration costs will be distributed to participating class members. (MFAC at 9 n.2-3.) Plaintiff also seeks a service award of $7,500. (Settlement Agreement at 16.) This leaves a net settlement amount of $646,051.95. (MFACS at 9.) Each individual settlement payment will be determined by the number of wage statements issued to the class member as a proportion of all wage statements issued to all class members. (Settlement Agreement at 10.) Accordingly, each Class member will obtain an individual net settlement averaging approximately $110.99. (MFACS at 9.) Class members who wish to be excluded from the Settlement Agreement must notify the settlement administrator within 45 days of receiving the notice. (Settlement Agreement at 15.) Class members who did not opt-out of the Settlement Agreement are participating class members. (Id.)

///

### D. Notice

The Settlement Agreement proposes the following procedure to notify the class members of the Settlement Agreement. (Id. at 5.) The parties selected Rust Consulting ("Rust") as the settlement administrator. (Settlement Agreement at 5.) Within fourteen days of the Court issuing a Preliminary Approval Order, Defendant will provide Rust with a class list identifying contact and wage statement information about each settlement class member. (Id. at 14.) Rust will then, within 28 days following the date of preliminary approval, populate the class notice accordingly and send each class member the class notice and a share form ("Notice") via first-class United States mail. (Id.) The share form will inform each class member of his or her estimated share of the settlement, dates of employment, and the number of wage statements he or she received from Defendant during the class period. (Id.; Dkt. No. 16-2, Exhs. 1–2.) The Notice shall state that class members who wish to opt-out of the Settlement Agreement must send a written notice to Rust requesting to opt-out of the Class within 45 days of the Notice mailing date. (Id. at 15.) Rust will run all the addresses provided by Defendant through the United States Postal Services National Change of Address database to obtain current address information. (Id.) If a Notice is returned from the initial mailing, then Rust will perform a skip trace search, seek an address correction, and mail a second-class Notice to any new or different address obtained. (Id.)

### E. Performance of the Settlement Agreement

The claims administrator received information for 5,830 class members. ("Schwartz Declaration," Dkt. No. 26-3 ¶ 7.) As of August 31, 2018, the claims administrator received a total of 11 requests for exclusion, 9 of which were timely. (Id. ¶ 12.) Two of the requests were postmarked after the June 7, 2018 deadline. (Id.) One request was postmarked June 8, 2018, and the other was postmarked June 12, 2018. (Id. at Exh. A.) The administrator has not received any objections or share form disputes. (Id. ¶¶ 13-14.)

### F. Class Action Fairness Act ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).

The statute provides detailed requirements for the contents of such a notice. Id. A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Here, class counsel Ackerman declares under penalty of perjury that Defense counsel served his office with a copy of the CAFA notice that was also served on the Office of the United States Attorney General and the Office of the California Attorney General on February 12, 2018. (Dkt. No. 26-1.) With that representation, the Court finds that the notice requirements of 28 U.S.C. § 1715 have been satisfied.

### III. LEGAL STANDARD

#### A. Class Action Settlement

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). A strong judicial policy favors settlement of class actions. See id.

Nevertheless, the Court must examine the settlement as a whole for overall fairness. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement. See id. "The settlement must stand or fall in its entirety." Id.

In order to approve the class action settlement herein, the Court must conduct a three-step inquiry. See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, it assesses whether the parties have met notice requirements under the Class Action Fairness Act. Id. Next, it determines whether the notice requirements of Federal Rule of Civil Procedure 23(c)(2)(B) have been satisfied. Id. Finally, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(3). Id.

#### B. Attorneys' Fees

The procedure for requesting attorneys' fees is set forth in Rule 54(d)(2). While the rule specifies requests shall be made by motion "unless the substantive law governing the action provides for the recovery of . . . fees as an element of damages to be proved at trial," the rule does not itself authorize the awarding of fees. "Rather, [Rule 54(d)(2)] and the accompanying advisory committee comment recognize that there must be another source of authority for such an award . . . [in order to] give[ ] effect to the 'American Rule' that each party must bear its own

attorneys' fees in the absence of a rule, statute or contract authorizing such an award." MRO Commc'ns, Inc. v. AT&T, 197 F.3d 1276, 1281 (9th Cir. 1999).

In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. See Alba Conte and Herbert B. Newberg, Newberg on Class Actions, § 14.1 (4th ed. 2005) ("Two significant exceptions [to the "American Rule"] are statutory fee-shifting provisions and the equitable common-fund doctrine"). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

## IV. RULE 23 REQUIREMENTS

### A. Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). (Preliminary Approval Order at 3–6.) Accordingly, the Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." Adoma, 913 F. Supp. 2d at 974; see also Harris v. Vector Marketing, No. C–08–5198, 2012 WL 381202 at *3 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the Court notes that it previously certified . . . a Rule 23(b)(3) class . . . [and thus] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); In re Apollo Group Inc. Securities Litigation, Nos. CV 04–2147–PHX–JAT, CV 04–2204–PHX–JAT, CV 04–2334–PHX–JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012). Here, the Settlement Class has not changed since it was conditionally certified. All the criteria for class certification remain satisfied, and the Court hereby confirms its order certifying the Settlement Class.

### B. Rule 23(c)(2) Notice Requirements

Rule 23(c)(2)(B) requires the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1). In its Preliminary Approval Order, the Court approved the notice sent to Settlement Class members. The claims administrator timely mailed the Notice Packet. (Schwartz Declaration ¶¶ 7–10.) The Court therefore finds that notice to the Settlement Class was adequate.

///
///
///

### C. Rule 23(e)

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982). The Court's inquiry is procedural in nature. Id. Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court held a final approval hearing on September 17, 2018. In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider some or all of the following factors:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed, and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) any opposition by class members.

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998). This list of factors is not exclusive and a court may balance and weigh different factors depending on the circumstances of each case. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### 1. Strength of Plaintiff's Case

The initial fairness factor addresses Plaintiffs' likelihood of success on the merits. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 964–65 (9th Cir. 2009). In determining the probability of Plaintiffs' success on the merits, there is no "particular formula by which that outcome must be tested." Id. at 965.

Here, Plaintiff believes there was a strong possibility of certifying his claims, and/or of pursuing his PAGA claims without a need for certification. (MFACS at 16.) However, Plaintiff recognizes Defendant has legal and factual defenses regarding the merits of the claim as well as certification of the class. (See id.) Specifically, Defendant would argue that Plaintiff's claims are preempted on five separate grounds. (Id. at 16-17.) The preemption defenses pose a significant risk as this Court, in a related case, granted a motion for judgment on the pleadings on federal

preemption grounds. (Id. at 16 (citing Fowler, et al. v. Union Pacific Railroad Company, Case No. 5:17-cv-02451-JGB (SPx).) Defendant further contends that it is not liable for a violation of California Labor Code Section 226 because any alleged violation was not "knowing or intentional." (Id. at 17.) Finally, Plaintiffs acknowledge that Spokeo v. Robins, 136 S. Ct. 1540 (2016) calls into question Article III standing for penalty claims dealing with "intangible harms." (Id.)

Given the challenges Plaintiff faces in continued litigation over such issues, the Court finds this factor weighs in favor of approval. See Barbosa v. Cargill Meat Solutions Corp., 1:11-CV-00275-SKO, 2013 WL 3340939, at *12 (E.D. Cal. July 2, 2013) ("Plaintiffs' likelihood of success appears to have been properly accounted for in the settlement amount.")

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing the risk, expense, complexity, and likely duration of further litigation, the Court evaluates the time and cost required. "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

Here, without settlement, the parties would continue litigating the class certification issue as well as the ultimate merits of the case – a long, complex, and expensive process. Therefore, the settlement avoids further protracted and expensive litigation. Accordingly, the Court finds this factor weights in favor of settlement approval.

### 3. Risk of Maintaining Class Action Status Throughout the Trial

Because the Court is not aware of any risks to maintaining class-action status throughout trial, this factor is neutral. Barbosa, 2013 WL 3340939 at *13; see also In re Veritas Software Corp. Sec. Litig., No. 03–0283, 2005 WL 3096079, at *5 (N.D. Cal. Nov. 15, 2005) (vacated in part on other grounds, 496 F.3d 962 (9th Cir. 2007)) (favoring neither approval nor disapproval of settlement where the court was "unaware of any risk involved in maintaining class action status"); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (finding that there were no facts that would defeat class treatment, the factor was considered "neutral" for purposes of final approval of class settlement).

### 4. Amount Offered in Settlement

The amount offered in the Settlement Agreement weighs in favor of final approval. According to Plaintiff's counsel, Plaintiff calculated if he prevailed on his class-wide claims, the maximum damages available to class members would be approximately $11,069,000.00. (MFACS at 18.) The gross settlement amount of $1,083,965.00 offers Plaintiff and class members approximately 9.7% of their maximum potential damages recovery. However,

Defendant raises numerous strong defenses to liability. Based on the relative strengths of each defense, Plaintiff calculated his expected recovery by discounting his maximum recovery to account for such risks. (MFACS at 18-19.) After these adjustments, Plaintiff's expected class recovery was either $553,450.00 or $1,079,767.33.[1] (MFACS at 19; MAF at 17.) Under either projection, the Settlement Agreement secures for class members a recovery over 100% of the expected value of their claims. Given the potential defenses Defendant could put forward, including an argument against class certification, the Court finds this amount offered here to be appropriate.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court evaluate whether "the parties have sufficient information to make an informed decision about settlement." Linney, 151 F.3d at 1239.

Here, the parties spent months before this suit was filed developing the factual record for this case. (MFACS at 19.) The parties participated in informal discovery and exchange of information, as well as two full day mediation sessions, all before the lawsuit was filed. (Id.) The parties have developed a clear idea of the strengths and weaknesses of their respective cases. See Lewis v. Starbucks Corp., No. 2:07-cv-00490-MCE, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008) ("[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."). In preparation for these mediations, Defendant provided the following: (1) a detailed letter setting forth Defendant's anticipated legal positions to Plaintiff's claims; (2) the total number of class members and the total number of class members in the various subclasses; (3) Defendant's compensation policies and other policies applicable to the class; (4) the total number of wage statements issued to the class during the PAGA Period and wage statement class period; (5) the total days worked by all class members in California during the class period; (6) class members' average shift length; (7) information about the amount of wages paid to the class; (8) the percentage of days worked by class members in California versus outside California; (9) the percentage of days worked by nonresidents in California versus outside California during the class period; (10) the applicable collective bargaining agreements; (11) Plaintiff's personnel file; and (12) a sample of wage statements issued to class members. (MFACS at 19-20.) The parties also drafted and exchanged detailed mediation briefs addressing the preemption defenses, strengths and weaknesses of the claims, and damages calculations. (Id. at 20.) The Court finds that the parties have engaged in substantial investigation of the facts and the applicable law. This factor favors approval.

### 6. Experience and Views of Counsel

In considering the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. See DIRECTV, Inc., 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most

---

[1] The two motions addressed here provide conflicting estimates of the expected recovery should this case be fully litigated.

closely acquainted with the facts of the underlying litigation[.]") (internal quotation marks and citations omitted). This reliance is predicated on the fact that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995).

Class counsel have substantial experience in prosecuting, defending, and negotiating the settlement of employment wage and hour class actions. (See "Ackerman Fee Declaration," Dkt. No. 22-1 ¶ 10; "Melmed Fee Declaration," Dkt. No. 22-2 ¶ 6; "Winston Fee Declaration," Dkt. No. 22-3 ¶¶ 4-6.) Class counsel believe the settlement is fair, adequate, and reasonable. (MFACS at 20-21.) They recommend approval as in the best interests of the class. (Id. at 20.) As a result, the experience and views of class counsel also weigh in favor of final approval.

### 7. Presence of a Governmental Participant

No governmental entity is present in this litigation. Therefore this factor favors approval.

### 8. Opposition by Class Members

No class member has opposed the settlement. (See Schwartz Decl. ¶ 13.) This factor favors approval.

## D. Attorneys' Fees and Costs

### 1. Fees

Class counsel also requests approval of its request for attorneys' fees. (See generally MAF.) Courts are obliged to ensure the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on the amount. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011.) "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth, 654 F.3d at 942. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." In re Bluetooth, 654 F.3d at 942 (quoting Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)).

A court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v.

Stenson, 465 U.S. 886, 895 n.11 (1984).  Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation, Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[2]  Under the percentage-of-the-fund method, an award of twenty-five percent of the gross settlement amount is the "benchmark" for attorneys' fees calculations.  Powers v. Eichen, 229 F.3d 1249, 1256-57 (9th Cir. 2000).

To determine whether the percentage requested is reasonable, courts may examine several factors, including:

> [T]he extent to which class counsel achieved the results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burden class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation mark omitted).  The Ninth Circuit has allowed courts to award attorney's fees using the percentage method "in lieu of the often more time-consuming task of calculating the lodestar."  Bluetooth, 654 F.3d at 942.

Here, Class counsel seeks 33.33% ($361,321.00) of the general common fund ($1,083,965.00).  (MAF at 1.)  The Court considered the results achieved and the risk of litigation (e.g., the number and quality of Defendant's defenses), as well as the skill required and worked performed to litigate this case.  Class Counsel obtained a settlement that confers a significant benefit to the Class, particularly in light of the risks involved in this litigation.  The net settlement available to the class totals approximately $646,051.95, or an average settlement share of approximately $110.99 per class member based on 5,821 class participants.  (MFACS at 9.)  Class counsel contends that the exceptionally high participation of class members and recovery in light of the risks facing the class warrant a 33.33% award.  (MAF at 5-8.)  Class counsel similarly notes that the settlement provides non-monetary benefits that make their fee request

---

[2] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  Kerr, 526 F.2d at 70.

substantially lower than the 25% benchmark. (Id. at 8.) Specifically, they note that Defendant agreed to change its wage statements in such a manner that would rectify the alleged unlawful practices at issue in this case. (Id. at 17.) Such a change in policy is difficult to quantify, but class counsel estimates the monetary value of this benefit is between $728,750.00 and $1,457,500.00. (MAF at 17; Ackerman Fee Decl. ¶ 40.) Considering the estimated value of the non-monetary benefits to the class, class counsels requested fee would be between 14.22% and 19.93% of the settlement value. (MAF at 8.)

In addition, the Court took into account the contingent nature of the fee and financial burden on counsel as well as awards made in similar cases. These factors, the Court finds, justify an award of 33.33% or $361,321.00 in attorneys' fees.

The Court now turns to the lodestar method as a means of cross-checking the 33.33% award requested. Counsel's work on the case, at this time, amounts to $259,399.25 and a total of approximately 546.33 hours. (Id. at 23.) Counsel represents that they will have to spend additional time going forward, estimating another 15 hours of attorney time in preparing the Motion for Final Approval and attending the Final Approval hearing. (Id.) Thus, the requested fee ($361,321.00) represents a lodestar multiplier of 1.32. In Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050-51 (9th Cir. 2002), the Ninth Circuit held the district court did not abuse its discretion when it approved attorney's fees after applying the lodestar method as a cross-check of the percentage method. The attorney's fees resulted in a of 3.65 lodestar multiplier in Vizcaino, which the Ninth Circuit upheld as "appropriate." Id. at 1051.

Here, Plaintiff's counsel billed at hourly rates ranging from $200-$890 for attorney timekeepers. (Ackerman Fee Decl. ¶ 59; Melmed Fee Decl. ¶ 12; Winston Fee Decl. ¶ 57.) Craig Ackerman billed $717/hour. Jonathan Melmed billed $440/hour. David Winston billed $385/hour.[3] Barry Goldstein billed $890/hour. Daniel Edelman billed $800/hour. Richard Kellner billed $800/hour. Avi Kreitenberg billed $500/hour. Sam Vahedi billed $440/hour. Alex McIntosh billed $200/hour. James Treglio billed $695/hour. Non-attorney staff including paralegals and legal assistants billed between $125/hour and $195/hour.

The Court reviewed the experience of the respective attorneys and finds the amount billed per hour to be reasonable. See Youngevity Int'l, Corp. v. Smith, No. 16-CV-00704-BTM-JLB, 2018 WL 2113238, at *5 (S.D. Cal. May 7, 2018) (citations omitted) ("Courts in this district have held a range of rates from $450-750 per hour reasonable for a senior partner in a variety of litigation contexts and specialties.") For instance, Craig Ackerman has been an employment attorney since 1997 and has handled numerous federal and state employment class action cases. (Ackerman Declaration ¶¶ 4-12.) Barry Goldstein has practiced employment law for 45 years and has taught employment law courses at Harvard Law School. (Id. ¶ 53a.) He has also served as lead counsel in multiple employment class actions that settled for amounts of $30 million.

---

[3] Winston notes that the $385 rate was a 2017 rate. His current fee, according to the Laffey Matrix, should be between $400 and $440 before adding a locality adjustment for Los Angeles. (Winston Fee Decl. ¶ 57 n.5.)

(Id.)  Richard Kellner has recovered hundreds of millions in judgments and settlements for his clients, reaching a $400 million settlement in one of these cases.  (Id. ¶ 53b.)  Daniel Edelman clerked for the Supreme Court of the United States and has practiced employment law for over 45 years.  (Id. ¶ 53c.)  As for James Treglio, his hourly rate is $695, but Class Counsel provides no information about his professional background (e.g., when he was admitted to the Bar or how long he has practiced law), and thus the Court cannot determine the reasonableness of his rate.  (See Melmed Decl. ¶ 12.)  Jonathan Melmed has practiced law for five years and served as class counsel in multiple California class actions.  (Id. ¶ 4.)  David Winston has been practicing law since 2014 with his practice focusing primarily on cases regarding wage and hour class actions and representative PAGA claims.  (Winston Decl. ¶ 3.)

Considering the complexity of the case, the risks involved, and the potential length of litigation, the Court finds this multiplier (1.32) to be appropriate.

### 2. Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. Proc. 23(h); see Trans Container Servs. v. Sec. Forwarders, Inc., 752 F.2d 483, 488 (9th Cir. 1985).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."  Rutti v. Lojack Corp., Inc., No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Class counsel requests $6,592.05 in costs, which is significantly less than the $15,000 projection in the Settlement Agreement.  (MAF at 25.)  Class counsel provides an itemized breakdown of the expenses in this case, which includes mediation fees, filing fees, travel costs, and postage.  (Ackerman Decl. ¶ 61; Melmed Decl. ¶ 13; Winston Decl. ¶ 60.)  All of these expenses are typically recoverable in litigation.  Cf. In re Immune Response Sec. Litig., 497 F. Supp. 2d 1166, 1177–78 (S.D. Cal. 2007) (finding similar categories of expenses reasonable in a class action settlement).  The Court therefore APPROVES the requested amount for costs.

### E. Incentive Awards

The trial court has discretion to award incentives to the class representatives.  See In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000); Pelletz, 592 F. Supp. 2d at 1329.  The criteria courts have used in considering the propriety and amount of an incentive award include: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort invested by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative.  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The Settlement Agreement provides for a $7,500 payment for the named Plaintiff. (Settlement Agreement at 10.) Plaintiff spent time in meetings with class counsel, being available during mediations, and assuming financial risk for pursuing this litigation. (MAF at 25; see also Ackerman Fee Decl. ¶ 62.) Plaintiff took the additional risk that his name would be known in the railroad industry by pursuing this litigation. (MAF at 25-26.) In California, there are only two primary railroad employers, one of which is Defendant. (Id. at 26.) Finally, this sum is less than 1% of the gross settlement amount. Given the Plaintiff's involvement and assumption of significant risk, the Court AWARDS $7,500 to Plaintiff Hollis.

## V.     CONCLUSION

For the reasons stated above, the Court:

1. GRANTS final approval of the Settlement Agreement;

2. AWARDS Class Counsel attorneys' fees in the amount of $361,321.00;

3. AWARDS Class Counsel costs in the amount of $6,592.05;

4. AWARDS $7,500 to Plaintiff Hollis;

5. ORDERS the payment of $37,500.00 to the California Labor and Workforce Development Agency;

6. ORDERS the payment of $25,000.00 to the claims administrator; and

7. DISMISSES the Complaint WITH PREJUDICE.

The Court ORDERS such judgment be entered.

**IT IS SO ORDERED.**